No. 34,594

U. F. WADE, *Appellee*, v. FORD MOTOR COMPANY, *Appellant*.

(99 P. 2d 775)

Opinion filed March 9, 1940.

*Harry Warren*, of Fort Scott, and *Alfred Kuraner*, of Kansas City, Mo., for the appellant; *T. J. Madden, Harry R. Freeman* and *John G. Madden*, all of Kansas City, Mo., of counsel.

*Douglas Hudson, Howard Hudson* and *Douglas Hudson, Jr.*, all of Fort Scott, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages on account of the breach of a contract. Judgment was for plaintiff. Defendant appeals.

The petition first alleged that plaintiff was a resident of Bronson, Kan., and that defendant was a Michigan corporation transacting business in Kansas. The petition then alleged that on or about April, 1938, the defendant, through its agent, one F. L. Macarty, entered into an oral contract with plaintiff, by the terms of which the defendant agreed that the plaintiff should be made a Ford dealer in Bronson, and would be permitted by the Ford Motor Company to buy products for resale in the customary way as a Ford dealer. The petition next alleged that as a part of this agreement it was agreed that plaintiff would buy a building in Bronson and would enlarge it so as to provide a place in which to give service to Ford automobiles and would purchase certain signs, parts bins and tools, peculiarly designed and appropriate to be used in connection with a Ford agency; that plaintiff should proceed at once in the

performance of his duties as Ford dealer by soliciting sales of Ford automobiles. The petition next alleged that in reliance upon this agreement plaintiff paid $650 for a building and spent $780 enlarging and repairing it at the suggestion of the agent of defendant; that he bought a Neon sign for $35, parts bins for $36 and tools specially designed for Fords for $30 and made sales of three Ford automobiles or trucks upon which he would have made a profit of $600; that after plaintiff had done these things the defendant refused to make him a Ford agent and refused to make deliveries to him at the customary dealer's price the automobiles and trucks he had sold. The petition further alleged that the building he had purchased, while of peculiar value to a person engaged as a Ford dealer, would not have been purchased by plaintiff except in reliance upon the oral contract, and after the refusal of the defendant to perform its part of the contract the building was not worth more than $750, and plaintiff had been damaged in that connection in the sum of $680; that the Ford signs purchased were valueless except to a Ford dealer and plaintiff had been damaged in that connection in the amount of $35; that the parts bins bought for $36 were worth only $18 and plaintiff had been damaged in the amount of $18 in that connection; that the tools bought for $30 were worth only $15 and plaintiff had been damaged $15 in that connection; and plaintiff had lost the commissions upon the three cars sold by him in the amount of $600.

Judgment was asked in the amount of $1,348 and costs.

To this petition the defendant by way of answer entered first a general denial. The answer then specifically denied that Macarty entered into any contract, as alleged in the petition, and further specifically denied that Macarty was the agent of defendant with authority to enter into an oral contract with the plaintiff, as alleged in the petition.

The reply was a general denial.

At the close of the evidence of plaintiff, defendant demurred to it on the ground that it did not prove facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. This demurrer was overruled. After the defendant's evidence and the court's instructions, the case was submitted to a jury, which returned a verdict in favor of the plaintiff in the amount of $800. Special questions were answered as follows:

"1. Was there a contract entered into by and between the plaintiff and defendant? Yes.

"If you answer the Question No. 1 in the affirmative, give the date and terms of such contract. 1-3-1938. Oral agreement."

The motion of the defendant for a new trial and for a judgment on the special questions notwithstanding the general verdict was overruled. Judgment was entered on the verdict. Hence this appeal.

The first point argued by defendant is that its demurrer to the evidence of plaintiff should have been sustained. Defendant presents its argument on this point under several headings. It first argues that plaintiff failed utterly to show a contract of any kind. This argument requires an examination of the evidence. In brief, the plaintiff testified that Macarty came to his place of business in Bronson in the fall of 1937; that Macarty introduced himself as representing the Ford Company as a road man; that he came in response to a letter plaintiff had written stating that he would like to be a Ford agent at Bronson. He testified further that on January 3, 1938, Macarty sold him a Ford car for $500, the dealer's price; that no sales tax was charged, and he sold this car for about $800 and gave the first title on the car to the purchaser. He testified further that subsequent to this Macarty told him that if he had a place and a proper service department he would give him the agency; that he went with plaintiff to look at different properties, and suggested the building he finally purchased and told him he would have to build an extension to it; that he bought the building April 18, 1938, and paid $650 for it in reliance on the promise of Macarty that he was to get the Ford agency; that he rebuilt the building as Macarty told him to, and it cost him $780; that a Mr. Baker from the Ford Motor Company was there specifying how the work should be done; that he paid $35 for a Ford Neon sign; that he paid $36 for some other article and sold it for $18; that after the building was completed Macarty said he wanted him to take him to Kansas City to sign a contract; that he signed a paper in Kansas City and Macarty told him to go back to Bronson and sell cars, and Macarty took him back; that when they returned to Bronson he asked Macarty to let him have the car they had driven down in; that Macarty did let him have the car and the man to whom he wished to sell it wanted a different type of car so Macarty took this car back; that he was to get the type car his customer wanted from Kansas City; that in May a Mr. Griffin came down and told him they were not going to give him the agency because they were going to cut out the small places and open up in the larger ones; that he talked to him

about the money he spent; and Griffin said they would buy the sign and make it right with him; that after he had fixed the building up it was reasonably worth $750. This story was corroborated in several particulars by the banker at Bronson and one or two other witnesses.

Very little is accomplished by detailing evidence in an opinion of this court. Without going further into detail, there was ample evidence to warrant the trial court in submitting to the jury the question of whether a contract was made between plaintiff on one side and Macarty, the agent of the Ford Company, on the other. What that contract was we shall see presently.

Defendant next argues that even if there was a contract proved it was so vague and indefinite in its terms as to be void. The evidence set out above proved a contract whereby the plaintiff agreed to buy a certain building, make specified repairs, and buy certain equipment, and in return the defendant was to make him its agent. There could hardly be an oral contract proved with any more certainty. The proof further established a complete performance on the part of plaintiff. It must be remembered that this is not a case where the parties entered into the written agency contract about which so much has been said in the brief of defendant, and then for some reason the company saw fit to terminate the agency. In this case every requirement made by the defendant was complied with and when time came for it to perform it refused to do so. In *King v. Machine Co.*, 81 Kan. 809, 106 Pac. 1071, this court said:

"Expenditures necessarily made in anticipation of, or in preparation for, the performance of a contract in which default is made or fulfillment prevented are usually recoverable." (Syl. ¶ 1.)

See, also, *Hope v. Sinclair Refining Co.*, 136 Kan. 353, 15 P. 2d 432:

Defendant next argues that the testimony of plaintiff concerning the oral negotiations between the parties failed to show any terms or conditions of the purported contract and the jury found none. This argument is based on the failure of the testimony of plaintiff to state the length of time available to plaintiff for performance, the time within which plaintiff should perform, the effective date of the purported contract, the termination date thereof, the prices at which automobiles and Ford Motor Company products should be bought and sold, the quantity of goods to be sold by defendant and purchased and resold by plaintiff. The trouble with that argument is

that this is not an action on account of the termination of an agency contract. The contract upon which recovery was sought was the failure of the defendant to make plaintiff its agent after it had caused plaintiff to make the expenditures, relying on being made the agent. There was some reference to anticipated profits from the sale of cars, but the jury quite evidently based its verdict on the expenditures the plaintiff had made. The verdict was for $800. When the evidence as to the price paid for the building for the repairs and for the equipment and then the testimony as to the present value of the building is examined it is clear that the jury did not make any allowance for loss of profits on the sale of cars. When the jury was asked whether a contract had been entered into between plaintiff and defendant it answered "yes." When asked to give the date and terms of the contract it answered as to the date "1-3-1938." This was the date when the car was sold to plaintiff by defendant. It certainly was the date that marked a definite understanding between parties, even though Macarty was still to help plaintiff select a building, and to tell plaintiff what he must do in the way of repairing it. As to the terms of the contract, the jury answered "oral agreement." This was quite evidently a reference to the oral contract pleaded in the petition and proved by the testimony, that is, to make the plaintiff the agent when plaintiff did the things required.

Defendant next argues that even if the terms of the formal dealership contract were incorporated into the purported oral agreement it is likewise unenforceable and void because of indefiniteness and uncertainty. Here the defendant refers to the contract which plaintiff signed in Kansas City. The argument under this head is that the dealership contract ordinarily entered into by the Ford Motor Company is unenforceable. With this argument we are not concerned here. The contract upon which the action was brought and which was proved by the plaintiff was an oral one.

The defendant next argues that the purported contract is unenforceable because lacking in mutuality. This argument is also directed at the written contract. What has just been said applies with equal force to this argument.

Defendant next argues that the purported agreement is completely lacking in consideration. Under this head defendant says "nothing passed from either party to the other in exchange for a promise, there was no promise by plaintiff, and accordingly defendant could

not be bound." The record discloses that the plaintiff fully performed the contract on his part by meeting certain requirements and the defendant promised to make him the agent.

The defendant next argues that breach of an agreement to enter into a specific dealership contract would give no greater right of recovery than would breach of the dealership contract itself. This argument has been dealt with in this opinion when considering the argument that the contract was too indefinite in its terms to be enforceable. The fact is, a Ford agency is a valuable thing. The defendant agreed to give this agency to plaintiff if he did certain things. He did them, and then defendant refused to perform its obligation under the contract. There can be no doubt about this. The plaintiff testified that one agent of the defendant stated that plaintiff would not be made the agent because the company had decided not to have agencies in the small towns, and a witness for defendant testified that the defendant did not perform because the plaintiff could not meet the company's financial requirements. The fact is, however, that it did not perform. The jury was entitled to believe the story of plaintiff.

Defendant next argues that plaintiff failed to show that the agent with whom he dealt had authority to bind the defendant; and the dealership contract, if relied upon by plaintiff, shows on its face that defendant is not bound thereby. On this point the evidence shows that Macarty called on plaintiff in answer to a letter plaintiff had written the company asking about being made agent; that he took plaintiff to the city after assisting plaintiff in selecting a building, and advising him as to what changes would be necessary. Macarty himself testified that part of his duties was arranging for Ford dealers in towns where there were none. It must be remembered that the contract sued on was not the written agency contract, but an oral contract to make plaintiff an agent.

Defendant next argues that plaintiff failed to show that he sustained damage as the result of a claimed breach of contract, and is in any event precluded by the dealership contract from recovering damages of the type awarded. We have already pointed out that plaintiff showed that he lost by buying and repairing the building and buying equipment just about what the jury awarded him.

The defendant next argues that the answers to the special questions were evasive, unresponsive and insufficient, and the trial court

erred in discharging the jury before the special questions were responsively answered. We have already dealt with this argument.

The judgment of the trial court is affirmed.

ALLEN, J., dissents.